**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

| | |
|---|---|
| DENEEN HAMLIN-LEWIS, a Disabled Person, by Marcus Lewis and Lisa Sanders, Co-Guardians of the Property of Deneen Hamlin-Lewis,<br>1710 Deschler Blvd.<br>Williamstown, NJ, 08094<br><br>and<br><br>MARCUS LEWIS, Individually<br>1710 Deschler Blvd.<br>Williamstown, NJ, 08094<br><br>      Plaintiffs<br><br>  vs.<br><br>ANNE ARUNDEL MEDICAL CENTER, INC.<br>2001 Medical Parkway<br>Annapolis, MD 21401<br>  Serve:  The Corporate Trust Incorporated<br>         351 West Camden Street<br>         Baltimore, MD 21201<br><br>    and<br><br>ANNAPOLIS OB-GYN ASSOCIATES, P.A.<br>2000 Medical Parkway<br>Suite 304, Belcher Pavilion<br>Annapolis, MD 21401<br>  Serve:  William M. Davidow, Jr.<br>         Miles & Stockbridge P.C.<br>         100 Light Street<br>         Baltimore, MD  21202<br><br>    and<br><br>FREDERICK H. GUCKES, M.D.<br>2000 Medical Parkway<br>Suite 304, Belcher Pavilion<br>Annapolis, MD 21401<br>        Defendants | Case No._____ |

**<u>COMPLAINT</u>**

## INTRODUCTION

1. This case involves a catastrophic brain injury inflicted upon Deneen Hamlin-Lewis, a first-time mother, as a direct result of multiple deviations from applicable standards of care by a hospital, its nurses, and its doctors. The defendant hospital, nurses, and doctor disregarded clear guidance from the obstetric community regarding the need for standardized treatment of severe hypertension in pregnant women, failed to control Mrs. Hamlin-Lewis' blood pressure, and failed to react appropriately to signs and symptoms of pulmonary edema and breathing difficulties. Defendants' negligence allowed Mrs. Hamlin-Lewis' hypertensive emergency to progress to the point where it triggered pulmonary edema, insufficient oxygenation, respiratory arrest, and then cardiac arrest – producing severe global hypoxic brain injury. Mrs. Hamlin Lewis' brain injury has required months of inpatient rehabilitation, rendered her permanently unemployable and fully dependent on her family members (primarily husband Marcus Lewis), and unable to care for her infant daughter. These catastrophic injuries and resulting damages would have been avoided in their entirety if defendants had acted in accordance with basic standards applicable to providers who treat patients with severe perinatal hypertension and patients who develop pulmonary edema.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as plaintiffs Deneen Hamlin Lewis and her husband Marcus Hamlin Lewis are residents and citizens of the state of New Jersey, and all defendants are residents and citizens of the state of Maryland, such that complete diversity of citizenship exists. Plaintiffs have

suffered damages and seek judgment in an amount in excess of the jurisdiction minimum under 28 U.S.C. § 1332.

3. Venue in this district is appropriate pursuant to 28 U.S.C. § 1391.

4. Plaintiffs filed this claim in the Maryland Health Claims Alternative Dispute Resolution Office, filed a certificate and report from a qualified expert, and filed an Election to Waive Arbitration to permit the case to be transferred to this Court.

5. Plaintiffs complied with all prerequisites for requesting transfer of this case from the Health Care Alternative Dispute Resolution Office to this Court.

6. An Order of Transfer was signed by Harry L. Chase, Director of the Health Care Alternative Dispute Resolution Office, on September 27, 2016, transferring the case to this Court.

**PARTIES**

7. Deneen Hamlin-Lewis and Marcus Lewis are husband and wife, and are citizens of New Jersey, residing in Williamstown, New Jersey. They have been married at all times relevant to the events set forth in this Complaint. They previously resided at 954 All Station Drive, Bowie, Maryland, but moved to New Jersey in order to accommodate the medical and related needs of plaintiff Deneen Hamlin-Lewis, a disabled person whose property is under the supervision and control of Marcus Lewis and Lisa Sanders, Co-Guardians of the Property of Deneen Hamlin-Lewis, pursuant to their appointment by the Circuit Court for Prince George's County, Maryland. Deneen Hamlin-Lewis and Marcus Lewis now live with Marcus Lewis' parents, who assist with Deneen's intensive round-the-clock care needs and with the care of their infant daughter.

8.     Plaintiff Deneen Hamlin-Lewis was a patient of defendants in 2015.

9.     Defendant Anne Arundel Medical Center, Inc. ("AAMC") is a corporation organized and existing under the laws of the State of Maryland, and at all times relevant hereto owned and operated the Anne Arundel Medical Center, and was the actual or apparent employer of Labor and Delivery nurses Crystal Hicks, RN and Jennifer Boucher, RN,  both of whom provided care and treatment to Deneen Hamlin-Lewis, and whose actions with respect to Deneen Hamlin-Lewis were within the scope of said employment, such that AAMC is responsible for any negligent acts or omissions of Labor and Delivery nurses Hicks and Boucher, and is responsible for systemic organizational failures to adopt, implement, and educate its nursing and physician staff in accordance with standards of care.

10.     Defendant Annapolis OB-GYN Associates, P.A. is a professional corporation organized and existing under the laws of the State of Maryland.  At all times relevant hereto, Annapolis OB-GYN Associates, P.A. employed defendant Frederick H. Guckes, M.D., whose actions and omissions with respect to Deneen Hamlin-Lewis were within the scope of said employment such that Annapolis OB-GYN Associates, P.A. is responsible for any negligent acts or omissions by Dr. Guckes.

11.     Defendant Frederick H. Guckes, M.D. is a physician specializing in obstetrics and gynecology.  At all times relevant hereto, Dr. Guckes was the actual employee of Annapolis OB-GYN Associates, P.A. and was acting within the scope of that employment, such that Annapolis OB-GYN Associates, P.A. is responsible for his actions.

**FACTS APPLICABLE TO ALL COUNTS**

12. Deneen Hamlin-Lewis (DOB: 06/27/75) obtained her undergraduate degree from South Carolina State University (B.S., Bio Pre-Med) and her postgraduate education from Towson University (M.S., Gerontology) and the University of Maryland College Park (CGeroG.).  At the time of the events in question, she was employed by Merck as a Multi-Specialty Vaccine Customer Representative.

13. Deneen Hamlin-Lewis and Marcus Lewis were married in Bowie, Maryland, on December 13, 2014, and have been continuously married since that time.

14. Deneen Hamlin-Lewis became a patient of Annapolis OB-GYN Associates, P.A. on July 2, 2013.  On March 26, 2015, she presented for her annual exam.  The record indicates that she and her husband desired conception.  She reported that her last menses began on March 13, 2015.  Within a few days of the visit of March 26, 2015, Mrs. Hamlin-Lewis and Mr. Lewis successfully conceived a child.  Her due date was December 18, 2015. She was a high risk patient because of advanced maternal age (and later for gestational diabetes and low maternal and fetal weight gain).

15. At approximately 8 weeks' gestation, Mrs. Hamlin-Lewis developed a urinary tract infection which progressed to a kidney infection; on May 7, 2015, she was admitted to AAMC with E Coli pyelonephritis, was discharged two days later, and was treated with a 10-day course of antibiotics.

16. On or about October 13, 2015, at a gestational age of 30 weeks 4 days, Mrs. Hamlin-Lewis was diagnosed with gestational diabetes; her blood pressures remained normal.  She was referred to the Anne Arundel Physician Group, LLC d/b/a Center for Maternal & Fetal Medicine.

17. On October 28, 2015, at a gestational age of 32 weeks 5 days, Mrs. Hamlin-Lewis had a return visit to the Anne Arundel Physician Group, LLC d/b/a Center for Maternal & Fetal Medicine where she was seen by Michael E. Lantz, M.D. At that time the estimated fetal weight was determined to be at the 10th percentile.

18. On October 28, 2015, Mrs. Hamlin-Lewis was also seen at Annapolis OB-GYN Associates. At that time her weight was noted to be 167 pounds. Her pre-pregnancy weight was incorrectly stated to be 157.8 pounds rather than 161 pounds.

19. On November 30, 2015, Mrs. Hamlin-Lewis was seen at 36 weeks 6 days at Anne Arundel Physician Group, LLC d/b/a Center for Maternal & Fetal Medicine, where she was seen by Jeffrey V. Spencer, M.D. At that time the estimated fetal weight was reported to be at the 38th percentile.

20. Mrs. Hamlin-Lewis carefully documented her blood sugars after being diagnosed with gestational diabetes. On or about December 4, 2015 (and at times prior to this date), Mrs. Hamlin-Lewis provided her physicians with that detailed documentation.

21. On December 7, 2015, Mrs. Hamlin-Lewis was seen at 38 weeks 3 days at Annapolis OB-GYN Associates, where her blood pressures were noted to be in the range of 140-150 systolic and 80-100 diastolic. Her weight was 172 lbs. She was sent to AAMC for laboratory studies for pregnancy induced hypertension (also known as preeclampsia).

22. Mrs. Hamlin-Lewis went to AAMC as directed and was admitted to the Labor and Delivery. Her blood pressure on admission was severely elevated at 182/106. Laboratory studies were initiated at 3:33 PM and showed elevated urine protein (2+) and low serum platelets (130).

23. Mrs. Hamlin-Lewis' blood pressures following admission to Labor and Delivery were severely abnormal, met the definition for sustained acute-onset severe hypertension (i.e., sustained systolic blood pressure of 160 mm Hg or higher, or diastolic blood pressure of 110 mg Hg or higher), and established the existence of a hypertensive emergency.  She continued to exhibit blood pressure readings that were elevated far above the accepted threshold for a hypertensive emergency (i.e., 160 mm Hg systolic or 110 mm Hg diastolic).  Those elevations included fourteen readings above the required level for treatment before the patient was administered anti-hypertensive medications and multiple other readings requiring escalating treatment with anti-hypertensives.

24. Defendants failed to administer antihypertensive medication to Deneen Hamlin-Lewis in a manner that complied with the standard of care in that, among other things, she was given inadequate doses of labetalol at inadequate intervals.  Her severe hypertension with preeclampsia was not brought under control and kept under control, but was instead allowed to persist and recur.

25. Mrs. Hamlin-Lewis was permitted by defendants to remain in an unacceptable state of severe hypertension for long periods of time without standard and appropriate treatment and without being informed of the risks of withholding standard and appropriate treatment for severe hypertension.

26. Despite repeated blood pressure measurements that qualified as severe hypertension, Mrs. Hamlin-Lewis received woefully inadequate doses of anti-hypertensives, to wit, a total of six 20 mg doses of IV labetalol, administered on December 7, 2015 at approximately 5:15 PM, 6:31 PM, 6:40 PM, and 8:07 PM, and on December 8, 2015 at 2:15 AM and 3:40 AM.  The approximate timing of blood pressure

measurements and labetalol administration during the first 13 hours after plaintiff's admission to AAMC was as follows:

| Date | Time | BP | Anti-hypertensive medication |
|---|---|---|---|
| 12/7/2015 | 3:26 | **182/106** | None |
| | 3:34 | **180/99** | None |
| | 3:49 | **176/97** | None |
| | 4:04 | **170/94** | None |
| | 4:09 | **170/95** | None |
| | 4:21 | **198/95** | None |
| | 4:38 | **199/112** | None |
| | 4:45 | **190/105** | None |
| | 4:51 | **203/109** | None |
| | 4:55 | **175/86** | None |
| | 5:00 | **179/94** | None |
| | 5:05 | **175/100** | None |
| | 5:10 | **188/95** | None |
| | 5:15 | **180/92** | Labetalol 20 mg IV |
| | 5:21 | **161/73** | None |
| | 5:26 | **171/85** | None |
| | 5:30 | **172/97** | None |
| | 5:32 | **173/88** | None |
| | 5:36 | **184/84** | None |
| | 5:55 | **191/89** | None |
| | 6:10 | **188/95** | None |
| | 6:31 | **184/85** | Labetalol 20 mg IV |
| | 6:40 | **173/82** | Labetalol 20 mg IV |
| | 6:55 | **171/89** | None |
| | 7:10 | **171/92** | None |
| | 7:38 | 153/77 | None |
| | 7:44 | 157/83 | None |
| | 7:59 | **166/90** | None |
| | 8:09 | 141/78 | Labetalol 20 mg IV (given at 2007 or 2011) |
| | 8:13 | 154/84 | None |
| | 8:18 | 149/83 | None |
| | 8:23 | 156/84 | None |
| | 9:15 | 150/76 | None |
| | 9:47 | 158/73 | None |
| | 10:16 | 147/77 | None |
| | 10:47 | **172/85** | None |
| | 10:52 | 142/69 | None |
| | 11:19 | 138/73 | None |

| | | | |
|---|---|---|---|
| 12/8/2015 | 00:19 | 140/74 | None |
| | 00:49 | 147/77 | None |
| | 02:02 | **161/81** | None |
| | 02:10 | **160/82** | None |
| | 02:15 | - | Labetalol 20 mg IV |
| | 02:19 | 151/77 | None |
| | 02:24 | 156/79 | None |
| | 02:29 | 159/92 | None |
| | 02:34 | **162/92** | None |
| | 02:40 | **171/85** | None |
| | 03:14 | **168/81** | None |
| | 03:31 | **184/107** | None |
| | 03:37 | **188/101** | None |
| | 03:40 | **184/98** | Labetalol 20 mg IV |
| | 03:43 | **172/95** | None |
| | 04:00 | **179/93** | None |
| | 04:03 | **179/98** | None |
| | 04:18 | **184/110** | None |

27. The applicable standard of care required that, in light of Mrs. Hamlin-Lewis' risk factors, history, and clinical presentation, defendants maintain vigilance and a high index of suspicion for potential problems so that prompt and effective interventions would occur as soon as possible. In violation of the standard of care, defendants failed to maintain vigilance and a high index of suspicion in that, among other things, they did not detect the multiple signs that Mrs. Hamlin-Lewis' condition presented grave risks to her and her child's safety and well-being.

28. The applicable standard of care in effect well before and during December 2015 required AAMC to ensure that guidelines, standard order sets and/or procedures were in place and adequately implemented with the staff to treat patients with acute onset, severe hypertension during pregnancy and the perinatal and postpartum period. In violation of the applicable standard of care, AAMC failed to adopt and/or implement such guidelines, standard order sets and/or procedures.

29. The applicable standard of care in effect well before and during December 2015 required the standardized use of antihypertensive therapy for women with severe hypertension during pregnancy, defined as sustained systolic blood pressure of at least 160 mm Hg or diastolic blood pressure of at least 110 mm Hg.  In violation of the standard of care, defendants failed to adopt and implement the standardized use of antihypertensive therapy for women with severe hypertension during pregnancy.

30. The applicable standard of care for initial first-line management of severe intrapartum hypertension with labetalol required administration of labetalol 20 mg IV over 2 minutes, followed in 10 minutes by labetalol 40 mg IV over 2 minutes, followed in ten minutes by labetalol 80 mg IV over 2 minutes, followed in 10 minutes by administration of hydralazine 10 mg IV over 2 minutes if either blood pressure threshold (i.e., 160 systolic or 110 diastolic) was still exceeded. Alternatively, the standard of care provided for administration of hydralazine or nifedipine in escalating doses (followed by administration of a labetalol), if the hypertension did not subside.  In violation of the duty owed to Mrs. Hamlin-Lewis, defendants failed to use antihypertensive therapy as required by the applicable standard of care.

31. Instead of being treated with appropriate and timely doses anti-hypertensives as required, Deneen Hamlin-Lewis was not started on labetalol in a timely manner and then received only six doses of 20mg labetalol administered in a haphazard manner over a period of more than 10 hours (during which time the efficacy of initial doses subsided due to limited half-life).  She was not administered any hydralazine or any other antihypertensive agent.

32. The applicable standard of care required defendants to formulate a plan for close monitoring, stabilization, and timely delivery.  Contrary to the standard of care,

Deneen Hamlin-Lewis was not timely stabilized, was not monitored appropriately, and the delivery of her child was not accomplished in a timely manner.

33.     The applicable standard of care required defendants to monitor for signs and symptoms that Mrs. Hamlin-Lewis' severely elevated blood pressures were causing systemic problems, such as pulmonary edema, and to treat those conditions as they arose.  Mrs. Hamlin-Lewis displayed multiple signs and symptoms of pulmonary difficulties and pulmonary edema, but in violation of the standard of care received no treatment to prevent deterioration of her respiratory and then her circulatory function.

34.     Defendants were required by the applicable standard of care to communicate among themselves regarding the patient's condition and to seek additional consults and resources for complications of Mrs. Deneen-Hamlin's untreated severe hypertension (i.e., pulmonary edema, respiratory difficulties, oxygen desaturation).  In violation of the standard of care, they failed to communicate appropriately, such that Mrs. Hamlin-Lewis did not receive any effective monitoring or treatment for her respiratory deterioration until the condition had progressed to a state of emergency.

35.     If Deneen Hamlin-Lewis had been treated in a manner that complied with the applicable standard of care, she would not have had persistent or recurrent severe hypertension, would have avoided the severe respiratory, circulatory and ultimately neurologic complications of inadequately treated severe hypertension, and would have safely delivered a normal healthy baby without any adverse maternal outcome.

36.     Instead, as a result of the failure of defendants to comply with the applicable standard of care, Deneen Hamlin-Lewis developed persistent and recurrent severe hypertension with preeclampsia that was not properly monitored or treated, and

that progressed to respiratory difficulties, pulmonary edema, and pulmonary arrest, followed by cardiac arrest, and devastating hypoxic brain injury.

37.     A Code Blue was called at 4:47 AM and plaintiff's child was delivered by emergency cesarean section at 4:52 AM.

38.     As a result of the failure of defendants to comply with the applicable standard of care, Deneen Hamlin-Lewis developed progressive respiratory deterioration characterized by hypoxia, agitation, restlessness, shortness of breath, pulmonary edema, respiratory and metabolic acidosis, and resulting ultimately in respiratory and then cardiac arrest.  This course of events produced severe ischemic anoxic encephalopathy with permanent neurological impairments of motor, emotional, behavioral, and cognitive functioning.

39.     As a further result of the failure of defendants to comply with the applicable standard of care, Mrs. Hamlin-Lewis is in a permanent state of total dependency, and will require life-long medical, nursing, and attendant care, with numerous hospitalizations and multi-specialty therapeutic interventions. She has incurred and will incur medical and related expenses, has suffered a loss of earnings and earning capacity, has been disabled from her usual occupations and pursuits, and has suffered severe and permanent deformity, disfigurement, pain, suffering, and mental anguish.

40.     As a further result of the failure of defendants to comply with the applicable standard of care, Marcus Lewis and Deneen Hamlin-Lewis have suffered a loss of consortium and damage to the marital relationship, including loss of marital and domestic services, child care services, care, attention, and affection.

## COUNT I – MEDICAL NEGLIGENCE

41. Plaintiff Deneen Hamlin-Lewis, by plaintiffs Marcus Lewis and Lisa Sanders as Co-Guardians of her Property, makes claim against defendants for medical negligence and incorporates by reference the allegations set forth in paragraphs 1 through 40 above.

42. Defendants were under a duty to exercise that degree of care and skill exercised by defendants in the same or related specialties under the same or similar circumstances.

43. Defendants breached the applicable standards of care in that, among other things, they:

   a. Failed to evaluate, monitor, diagnose, and treat plaintiff appropriately;

   b. Failed to perform adequate physical examinations and follow-up evaluations;

   c. Failed to develop appropriate differential diagnoses;

   d. Failed to adopt and follow appropriate standards and protocols;

   e. Failed to diagnose, monitor, and treat preeclampsia and severe acute onset perinatal hypertension;

   f. Failed to have standard order sets, pathways, or similar materials which reflect applicable standards of care;

   g. Failed to educate, train, or otherwise supervise nursing staff in a manner that allowed them to treat perinatal hypertensive patients in a manner that complied with the standard of care;

   h. Failed to communicate appropriately among providers regarding plaintiff's need for antihypertensive treatment;

   i. Failed to understand the severity and potential danger of severe hypertension with preeclampsia in this patient;

j. Failed to treat hypertension and preeclampsia with proper therapies at proper dosages and frequency of administration;

k. Failed to recognize that the patient required immediate stabilization;

l. Failed to formulate and carry out a plan for delivery that would be safe for mother;

m. Failed to restrict food intake, and giving the patient dinner instead of moving her to the operating room for prompt delivery;

n. Failed to measure blood gases;

o. Delayed administration of the first dose of antihypertensive therapy;

p. Delayed administration of additional doses of antihypertensive therapy;

q. Failed to act reasonably to detect the onset of pulmonary edema;

r. Failed to treat the pulmonary edema appropriately;

s. Failed to give Lasix as required;

t. Gave the patient excessive fluid; and

u. Laid the patient flat on her back on the OR table despite the presence of pulmonary edema.

44. As a result of defendants' breaches of applicable standards of care, plaintiff Deneen Hamlin-Lewis has suffered severe and permanent injuries and damages as aforesaid. She has also suffered and will in the future suffer severe disfigurement and deformity, has incurred and will in the future incur medical and related expenses, has suffered and will in the future suffer a loss of earnings and an impairment of her earning capacity, has been and in the future will be disabled from a wide range of occupations and pursuits, and has suffered and will in the future suffer severe physical pain and mental anguish and other damages.

WHEREFORE, plaintiff Deneen Hamlin-Lewis, by Marcus Lewis and Lisa Sanders as Co-Guardians of her Property, demands judgment against defendants AAMC, Annapolis OB-GYN Associates, P.A., and Frederick H. Guckes, M.D., in an amount well in excess of the jurisdiction minimum under 28 U.S.C. § 1332, plus costs.

## COUNT II – LACK OF INFORMED CONSENT

45.  Plaintiff Deneen Hamlin-Lewis, by plaintiffs Marcus Lewis and Lisa Sanders as Co-Guardians of her Property, makes claim against defendants for lack of informed consent and incorporates by reference the allegations set forth in paragraphs 1 through 44 above.

46.  Defendants were under a duty to obtain plaintiff's informed consent as required by Maryland law.

47.  Defendants failed to obtain plaintiff's informed consent to their treatment and management of her condition, and did not advise her of the severe risks inherent in their decision to withhold appropriate evaluation and standard treatment, and failed to inform her of the availability of alternative and more effective treatments than those which she was provided.  If she had been informed of such risks and available alternative treatments, consent to defendants' treatment would have been withheld.

48.  As a result of the defendants' failure to obtain plaintiff's informed consent, plaintiff Deneen Hamlin-Lewis has suffered severe and permanent injuries and damages, as set forth above. She has also suffered and will in the future suffer severe disfigurement and deformity, has incurred and will in the future incur medical and related expenses, has suffered and will in the future suffer a loss of earnings and an impairment of her earning capacity, has been and in the future will be disabled from a

wide range of occupations and pursuits, and has suffered and will in the future suffer severe physical pain and mental anguish and other damages.

WHEREFORE, plaintiff Deneen Hamlin-Lewis, by Marcus Lewis and Lisa Sanders as Co-Guardians of her Property, demands judgment against defendants AAMC, Annapolis OB-GYN Associates, P.A., and Frederick H. Guckes, M.D in an amount well in excess of the jurisdiction minimum under 28 U.S.C. § 1332, plus costs.

## COUNT III – LOSS OF CONSORTIUM

49.   Plaintiffs Deneen Hamlin-Lewis and Marcus Lewis incorporate by reference the allegations set forth in paragraphs 1-48 above.

50.   As a result of defendants' negligent failure to adhere to applicable standards of care and failure to obtain plaintiff Deneen Hamlin-Lewis' informed consent, plaintiffs Deneen Hamlin-Lewis and Marcus Lewis have suffered loss of consortium and services and damage to their marital relationship.

WHEREFORE, plaintiffs Deneen Hamlin-Lewis, by Marcus Lewis and Lisa Sanders as Co-Guardians of her Property, and Marcus Lewis demand judgment against defendants AAMC, Annapolis OB-GYN Associates, P.A., and Frederick H. Guckes, M.D. in an amount well in excess of the jurisdiction minimum under 28 U.S.C. § 1332, plus costs.

Respectfully submitted,

*/s/ Denis C. Mitchell*
Gerard E. Mitchell (Bar No. 02120)
gemitchell@steinmitchell.com
Denis C. Mitchell (Bar No. 26510)
dmitchell@steinmitchell.com
STEIN MITCHELL CIPOLLONE BEATO & MISSNER, LLP
1100 Connecticut Avenue, NW
Suite 1100
Washington, DC 20036
(202) 737-7777
ATTORNEYS FOR PLAINTIFFS

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

*/s/ Denis C. Mitchell*
Gerard E. Mitchell
Denis C. Mitchell